UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JIM HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 1:16-cv-83 SNLJ |
| vs. | ) |
| | ) |
| NINA HILL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM and ORDER

Plaintiff Jim Harris filed this lawsuit *pro se* against prison nurse practitioner defendant Nina Hill. Defendant Hill moved for summary judgment (#72). Plaintiff filed a response memorandum (#82) and a response to Hill's statement of facts (#83) followed by a "Motion to Allow Doc. #83 and #82 to Remain As Submitted to this Court" (#87). Defendant filed a reply memorandum in support of summary judgment (#88). Plaintiff then filed a surreply (#89). Defendant filed a motion to strike (#90) the surreply. Plaintiff did not respond to defendant's motion to strike.

**I.     Background**

Plaintiff entered the Missouri Department of Corrections ("MDOC")'s Eastern Reception, Diagnostic, and Correctional Center ("ERDCC") on July 13, 2012. Nonparty Advanced Nurse Practitioner Duhadway[1] assigned plaintiff to "M-2 Status," which required that plaintiff be assigned to a location where he could have 16-hour nursing staff. Level M-1 status would have indicated plaintiff had no treatment needs.

---

[1] Plaintiff disputes that Duhadway was a nurse practitioner because plaintiff believes Duhadway was a doctor. There appears to be ample record evidence that Duhadway is a nurse practitioner (including Duhadway's own signature indicating his status as "ANP"). Regardless, the distinction for purposes of this case is not important.

1

Duhadway appears to have assigned plaintiff a "lay-in" or medical restriction to the use of a lower bunk. Notably, the "Lay-In/Restriction History" report shows the lower bunk restriction with a "Begin Date" of July 20, 2012 (just after plaintiff entered ERDCC) and an "End Date" six months later on January 20, 2013.[2] The report also includes a column for "Discontinue Date," which is marked 00/00/0000 for the lower bunk restriction. For reasons that are not entirely clear, MDOC assigned plaintiff to a custody duty status of "Cardiac History – Lower Bunk." Although the medical lay-in for lower bunch expired on January 20, 2013, it appears that MDOC --- which is an entity separate from the individuals and the company that provide health services to inmates --- continued to include "Cardiac History – Lower Bunk" as plaintiff's "custody status." That custody status cannot be changed by medical personnel.

    Plaintiff has a number of health problems. He was seen periodically in the Chronic Pain Care Clinic for knee and hip arthritis (plaintiff disagrees that he is still being treated for those ailments). He has an old gunshot wound that plaintiff says resulted in some hand weakness. Although plaintiff suggested in his complaint that the gunshot resulted in a spinal cord injury, there is no record evidence to support that allegation. Further, although one doctor noted some wasting in the thumb-web of plaintiff's right hand, plaintiff has not been diagnosed with thumb weakness. Plaintiff was diagnosed with degenerative joint disease on January 22, 2013 and was ordered for

---

[2] Despite defendant's otherwise helpful briefing, there are numerous irregularities with respect to defendant's citation to record evidence. For example, although defendant cites to the Lay-In/Restriction History report, she indicates that the lower bunk lay-in was intended to expire on December 20, 2013. This appears to be a typographical error. In addition, defendant cites to Document No. 55 at "MR-319," but that 402-page document begins with a document Bates labeled MR-328. It appears that defendant intended to cite to MR-644, which is page 319/402 of the entire document. (Pagination for the entire document, however, is only visible in a web browser toolbar when the document and its nine exhibits are opened at the same time). Another example: defendant cites to her Statement of Facts "at 4" and the plaintiff's Statement of Facts Response "at 23" to support her statement that the lay-in discontinuation was documented by a different nurse. Although the medical record does reflect that fact (#17-2 at 16, MR-016), the pages cited by defendant do not support the statement. These and other errors are frustrating to the Court and time-consuming to sort out.

no prolonged standing or running. Plaintiff also had a non-union of a fracture in his jaw which affected his eating, so non-party Nurse Practitioner Graham renewed lay-ins on May 21, 2015 for "extra time to eat, early main line, [and] no peanut butter." On June 15, 2015, plaintiff saw defendant Nurse Practitioner Hill as a followup to the May 21 appointment. Plaintiff reported that the medications were helping and his pain had "lessened significantly." Thus, on June 18, Hill sent an order recorded by nonparty Nurse Lizenbee to discontinue the lay-in for "early mainline, no peanut butter and for extra time to eat."

That lay-in is recorded on the Lay-In/Restriction History report. Its Begin Date is May 21, 2015 and its End Date is a year later, May 21, 2016. The "Discontinue Date" is June 18, 2015, which comports with the medical records that show that the lay-in was discontinued by defendant Hill.

On November 2, 2015, plaintiff complained to nonparty Dr. Massey that his bottom bunk lay-in had been taken away. A few days later, plaintiff says he fell from his bunk and injured himself such that he was unable to walk. He was treated for his complaints by Hill and by other nonparty medical staff.

Plaintiff's work history with the prison shows that he has worked as a gardener at SECC starting in June 2014. By November, he had worked 99 hours in that position. By July 2015, plaintiff had worked an additional 120 hours. Plaintiff adds that he was a supervisor and "only instructed guys on their labor" in that role.

Plaintiff filed this lawsuit on April 15, 2016. He claims that defendant Hill violated his Eighth Amendment right to be free from cruel and unusual punishment when she cancelled his bottom bunk lay-in. Because plaintiff filed the lawsuit *in forma pauperis*, this Court reviewed the complaint for frivolity under 28 U.S.C. § 1915.

Although the plaintiff had three "strikes" under 28 U.S.C. § 1915(g) because he had filed three frivolous suits in the past, the Court found that plaintiff had shown that he was in "imminent risk of serious physical harm" and concluded that granting *in forma pauperis* status was appropriate. (#9 at 1 n.1.) Notably, the Court based that decision on plaintiff's allegations that his bottom bunk lay-in had been cancelled despite his "handicap," which was due to "a gunshot injury to his cervical spine, nerve damage, and muscle loss." (*Id.* at 2.) As indicated above, it appears that the gunshot wound did not cause damage to his spine.

Defendant Hill has moved for summary judgment.

**II.  Motion for Summary Judgment**

Pursuant to Rule 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of

any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The Court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). However, the nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).

Plaintiff claims defendant Hill violated his Eighth Amendment rights under the United States Constitution. To establish a such a violation under these circumstances, plaintiff must show defendant was deliberately indifferent to the plaintiff's serious medical needs. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)).

In order to satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show the defendant knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). A prison official may be liable under the Eighth Amendment if he knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman*, 114 F.3d. at 785 (citing *Farmer v. Brennan*, 511 U.S. 825, 847

(1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn*, 557 F.3d at 908 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). "Neither differences of opinion nor medical malpractice state an actionable Constitutional violation." *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).

Plaintiff argues that defendant Hill discontinued his bottom bunk lay-in and that such an act showed deliberate indifference to his serious medical needs. Defendant Hill argues that she was not deliberately indifferent to plaintiff's medical needs because she did not, as plaintiff argues, discontinue any medical lay-in for "bottom bunk" status. Plaintiff believes that when Hill discontinued his lay-ins for "early mainline, no peanut butter and for extra time to eat," that she also cancelled his bottom-bunk lay-in. Hill denies that is true, and nothing in the documentation supports that Hill's June 18, 2015 lay-in discontinuation included canceling the bottom bunk lay-in. Rather, the evidence shows that Hill canceled only the lay-ins for "early mainline, no peanut butter and for extra time to eat."

First, the "Lay-In/Restriction History" report shows just one lower bunk restriction. That lower bunk restriction had a "Begin Date" of July 20, 2012 (just after plaintiff entered ERDCC) and an "End Date" six months later on January 20, 2013. The report includes a column for "Discontinue Date," which is marked 00/00/0000 for the lower bunk restriction because it expired on January 20, 2013 and was not discontinued early. (#43-2 at 1.) In contrast, the same documents shows that the "Early Mainline" lay-in began May 21, 2015, was set to end on May 21, 2016, and was discontinued on June 18, 2015. (*Id.*)

Although plaintiff argues that defendant Hill has fraudulently changed the records to hide that she did in fact discontinue the "bottom bunk" lay-in, plaintiff has provided

6

zero evidence of any such alteration. The June 18, 2015 discontinuation was actually entered by a different nurse, nonparty nurse Lizenbee, and numerous other documents reflect the same information, i.e., that defendant Hill discontinued the "early mainline" and eating-related lay-ins and not the "bottom bunk" lay-in.

Next, plaintiff cites to an June 16, 2015 document that states as follows:

Current Duty Status:  2
    CARDIAC HISTORY-LOWER BUNK

Lay-In Restrictions:
    EARLY MAINLINE                    Limits: 000

Comments:
    NO PEANUT BUTTER, REQUIRES EXTRA TIME TO EAT

Devices:

Begin Date:  05/21/2015    Begin Time:  11:49 AM

End date:    05/21/2016    End Time:    11:59 PM

Discontinue:  00/00/0000

(#23 at 2.)  Plaintiff states, in a late-filed document (#89), that his original version of that document has the word VOID written across the document --- but, because VOID is written in highlighter, it does not show on the copy. Plaintiff suggests that the "VOID" was somehow discontinuing the bottom-bunk status.

Even assuming that "VOID" has been written across the "Lay-In Form," as plaintiff calls it, the lay-in for "early mainline" <u>was</u> discontinued before the original "end date." The Duty Status of "Cardiac History-Lower Bunk" is not, by the terms of plaintiff's own document, a medical lay-in. Any "VOID" of the document likely

7

corresponds to the lay-in restriction and not to the custody status --- moreover, it is undisputed that the defendant could not change plaintiff's "Lower Bunk" custody status.

It may be that plaintiff's <u>custody</u> status, which apparently required a lower bunk, changed, resulting in his being moved to an upper bunk sometime after June 18, 2015. To the extent plaintiff's <u>custody</u> status changed around the June 18, 2015 lay-in change, it is undisputed that defendant had no control over the custody status. Any custody status change, to the extent it was caused by the expiration of the "bottom bunk" lay-in, was in no way related to any action by defendant Hill because the "bottom bunk" lay-in expired in January 2013.

Plaintiff states that on November 9, 2017, a new SECC doctor placed plaintiff back on the "bottom bunk" lay-in. If plaintiff is suggesting that defendant Hill should have done the same, the record shows that, at the time of defendant Hill's treatment, she and other medical staff assessed plaintiff's physical capabilities and noted he was able to function appropriately --- including that he was able to move on and off the examination table and work in the garden. Nothing in the record supports that Hill disregarded any excessive risk to plaintiff's health.[3] To the extent the new SECC doctor assessed plaintiff's health differently --- even if plaintiff's condition was unchanged since he was

---

[3] Plaintiff suggests that nurse practitioner "Duhadway determined Cardiac History – Lower Bunk seizure Disorder [and that] This automatically requires a[] lower bunk." (#83 at 3 (citing Harris RPD 0725 (#74-2 at 2)). Plaintiff has no support for his statements that Duhadway determined the Cardiac History-Lower Bunk custody status. Rather, plaintiff has stated that "custody status" is determined by MDOC and cannot be altered by medical staff. (#83 at 24 ("medical has nothing to do with custody, and custody has nothing to do with medical lay-ins").) With respect to the purported "seizure disorder," plaintiff apparently relies on the M-Score and Duty Status record (Harris RPD 0725) because it states that plaintiff's medical status is M-2, which requires, among other things, that the offender be "seizure free for 1 year." Although it identifies plaintiff's duty status as "Cardiac History – Lower Bunk" in a separate section, it does not state that plaintiff had a seizure disorder or that plaintiff required a lower bunk because of a seizure disorder. Although medical lay-ins may affect custody's duty status determinations, plaintiff's oblique reference to a "seizure disorder" (which otherwise appears nowhere in his medical record) is a red herring. Notably, defendant represents that although she sought records from MDOC regarding when plaintiff was moved from a bottom bunk to a top bunk, there is no record of when that occurred. (#88 at 4 n.5.)

treated by defendant Hill --- "[n]either differences of opinion nor medical malpractice state an actionable Constitutional violation." *Jones*, 310 F.3d at 612.

### III. Other Motions

Plaintiff filed a "Motion to Allow Doc. #83 and #82 to Remain As Submitted to this Court" (#87). Document Numbers 82 and 83 are plaintiff's response memorandum and response to defendant's statement of facts. It is apparent that plaintiff styled this document as a motion as a way to file additional briefing in support of his position. Plaintiff also filed a surreply without leave of Court (#89), which defendant moved to strike (#90). In the interests of justice, the Court has read and considered all of plaintiff's filings. However, because plaintiff's "Motion to Allow" does not seek any cognizable relief, it will be denied. Defendant's motion to strike will be denied, although the Court has read and considered the substance of defendant's motion to strike as a surresponse.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment (#72) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's "Motion to Allow Doc. #83 and #82 to Remain As Submitted to this Court" (#87) is **DENIED.**

**IT IS FURTHER ORDERED** that defendant's motion to strike (#90) is **DENIED.**

Dated this  29th  day of June, 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE